```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF MISSOURI
                        EASTERN DIVISION
```

HABERBERGER, INC.,             )
                               )
            Plaintiff,         )
                               )
       vs.                     )      No. 4:05-CV-492 (CEJ)
                               )
TEAMSTERS LOCAL 682,           )
                               )
            Defendant.         )

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff's motion for judgment on the pleadings and defendant's motion for summary judgment.[1] The issues are fully briefed.

Plaintiff Haberberger, Inc., (hereinafter "Company") is a party to a collective bargaining agreement (hereinafter "Agreement") with defendant Teamsters Local 682 (hereinafter "Union"). On April 23, 2003, the Company fired union member Robert Nagl. On December 27, 2004, an arbitrator determined that the termination violated the terms of the Agreement and ordered the Company to reinstate Nagl and make him whole. The Company brought this action to vacate the award

---

[1] Defendant initially filed a motion for summary judgment asking the Court to enforce the arbitrator's award. Plaintiff objected that defendant was not entitled to any relief since defendant had not asserted a counterclaim. Defendant subsequently filed a motion to retitle its motion as a "motion for summary judgment and to enforce the arbitration award," which plaintiff also opposes. The absence of a counterclaim does not prevent the Court from confirming the arbitration award. See, e.g., Minneapolis-St. Paul Mailers Union Local # 4 v. Northwest Publications, Inc., 379 F.3d 502, 508 (8th Cir. 2004) (district court granted defendant's motion for summary judgment and confirmed award).

and moves for judgment on the pleadings. The Union moves for summary judgment and to confirm the award.

**I.   Legal Standard**

In ruling on a motion for judgment on the pleadings, the Court accepts as true all facts pleaded by the non-moving party and grants all reasonable inferences from the pleadings in favor of the non-moving party. Faibisch v. University of Minnesota, 304 F.3d 797, 803 (8th Cir. 2002). Judgment on the pleadings is not properly granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law. United States v. Any and all Radio Station Transmission Equipment, 207 F.3d 458, 462 (8th Cir. 2000).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S.

574, 586-87 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

**II. Background**

On April 23, 2003, the Company fired employee Robert Nagl for poor driving and for refusing to perform assigned work. The Union filed a grievance that same day protesting Nagl's termination. A grievance meeting in late May or early June 2003 did not resolve the grievance. Thereafter, counsel for the Union requested an arbitration panel through the Federal Mediation and Conciliation Service (FMCS). There is no dispute that the Union did not notify the Company in writing that it was seeking arbitration of the Nagl grievance. The Company asserts that the first notice it had of arbitration was when it received a letter from FMCS on July 31, 2003, with the names of possible panel members. At that time, the Company protested that it had not been timely notified in writing of the request for arbitration and refused to proceed. The Union filed suit in this Court to compel arbitration. See Teamsters Local 682 v. Haberberger, Inc., Case No. 4:03-CV-1466 (CEJ). The Court denied the

Company's motion to dismiss and the parties agreed to proceed to arbitration without prejudice to the Company's argument that the arbitration was untimely.

Arbitrator Gerald Fowler[2] held a hearing on September 29, 2004. At arbitration, the Company challenged Fowler's jurisdiction because the Union failed to notify the Company in writing that it intended to pursue arbitration, as required by the Agreement (see below). Addressing the merits of the grievance, the Company argued that Nagl quit his job and was not terminated. The Company also contended that, if Nagl was terminated, he had received multiple warnings and thus was fired for just cause.

The Union presented evidence that it had verbally informed the Company that it intended to pursue arbitration. The Union argued that the Agreement provision regarding written notification was permissive and not mandatory. With regard to the merits of the grievance, the Union argued that, under the progressive discipline section of the Agreement, the Company was required to issue Nagl three written warnings before discipline could be imposed.

Arbitrator Fowler issued an award on December 27, 2004. He found that the Union had provided oral notice of its intent to arbitrate and concluded that the Union's failure to provide written notice of intent to seek arbitration did not deprive him of jurisdiction. On the merits, he concluded that Nagl's conduct warranted a written warning and that the Company did not have just

---

[2]The parties agreed to submit the matter to a single arbitrator, rather than a three-member panel as outlined in the Agreement.

-4-

cause for terminating him.  Accordingly, Fowler ordered the Company to convert Nagl's discharge to a written warning, to reinstate him to his former position, and to make him whole for all losses suffered as a result of his discharge.

### III. Discussion

Judicial review of an arbitration award is very limited. Star Tribune Co. v. Minnesota Newspaper Guild Typographical Union, 450 F.3d 345, 348 (8th Cir. 2006).  The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on a misinterpretation of the contract.  United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987); see also id. at 39 ("[O]nly improvident, even silly, factfinding is claimed.  This is hardly a sufficient basis for disregarding what the [arbitrator] appointed by the parties determined to be the historical facts.").  "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."  United Food & Commercial Workers, AFL-CIO v. Shop 'N Save Warehouse Foods, Inc., 113 F.3d 893, 895 (8th Cir. 1997) quoting John Morrell & Co. v. Local Union 304A of the United Food & Commercial Workers, 913 F.2d 544, 559 (8th Cir. 1990).  The courts will only vacate an award if the arbitrator ignored or disregarded the plain language of an unambiguous contract or nullified a provision of the contract.  Star Tribune, 450 F.3d at 348, citing International Paper Co. v. United Paperworkers Int'l Union, 215 F.3d 815, 817 (8th Cir.

2000). Of course, decisions procured through fraud or the arbitrator's dishonesty need not be enforced. United Paperworkers, 484 U.S. at 38.

The Company challenges the arbitrator's interpretation of Article IX, Section 3 of the Agreement to permit verbal notice of intent to arbitrate. Sections 1 and 2 of Article IX address internal attempts to resolve disagreements between Union members and the Company. Section 3 provides: "If the grievance has not been settled as a result of the foregoing, <u>the union or the company may submit it to arbitration by notifying the other in writing within ten (10) days after the company's decision</u> [at the second stage of internal review]. . . ." (emphasis added). The Company argued in the arbitration proceedings, and again here, that Section 3 requires timely written notice in order to compel arbitration.

Arbitrator Fowler disagreed, finding that the word "may" rendered Section 3 permissive rather than mandatory. He noted that other language in the grievance procedure provides that the parties "shall" take certain steps.[3] In addition, the contract does not explicitly provide that the failure to provide written notice amounts to a waiver of the right to proceed to arbitration where oral notice has been provided.

---

[3]Section 1, for example, states that the aggrieved employee "shall first take the matter up with the shop steward who in turn will take the grievance up with the foreman . . ." Furthermore, the employee "shall" submit a grievance to the union in writing within ten days. Section 2 addresses referral of an unresolved grievance to the general manager and similarly uses the word "shall."

Arbitrator Fowler read Section 3 in light of Section 4, which provides: "There shall be no strikes or lockouts during [t]he term of this agreement. However, if a party shall refuse to submit a dispute to arbitration after receiving notice under Section 3 above or shall fail to abide by an arbitrator's decision, then the other party shall not be bound by the no strike-no lockout provisions of this section." Arbitrator Fowler noted that if the Union provides written notice of intent to arbitrate, it is relieved from the "no strike" rule if the Company does not submit to arbitration or fails to comply with an arbitrator's award. Arbitrator Fowler determined that reading Section 3 to require written notice in order for the parties to proceed to arbitration would lead to permitting the suspension of the "no strike-no lockout" rule. Such an "absurd result . . . is neither countenanced by the language of the Agreement, the history of arbitration in the United States, or decades of arbitral and court decisions regarding the preference of arbitration over strikes and lockouts."

The Company asserts that Section 3 is properly interpreted to mean that the parties may, but are not required to, proceed to arbitration if the grievance process does not settle the dispute. If a party chooses to proceed to arbitration, the Company asserts, that party must timely provide written notice. The Company relies on <u>Detroit Coil v. International Ass'n of Machinists & Aerospace Workers</u>, 594 F.2d 575, 579 (6th Cir. 1979). In <u>Detroit Coil</u>, the Agreement provided that "unless . . . the Company is Notified within eight (8) working days from the date which last the Local Lodge meets

. . . the grievance . . . shall be considered settled." Id. at 579 (ellipses in original). The Company did not receive notice within the eight-day period. The arbitrator determined that the grievance was arbitrable, in part, because the letter was dated within the proper time and because the parties had on two prior occasions failed to enforce the time limits. The Court of Appeals held that the arbitrator had exceeded his authority by finding that the parties intended "to expand the scope of the word 'notified' to encompass the mere dating of a letter . . . indicating the Union's intent to arbitrate a grievance." Id. at 580.

The Company's reliance on Detroit Coil is misplaced: This Court must follow Eighth Circuit law, which is notably more deferential to the arbitrator's decision than that articulated in Detroit Coil. Furthermore, the Sixth Circuit itself has in subsequent cases narrowed the scope of a court's review of labor arbitration. See Local 689 Int'l Union of Electronic, Elec., Salaried Mach. & Furniture Works v. Hewitt Soap Co., 65, F.Supp.2d 717, 720 (S.D. Ohio 1999) (discussing cases after Detroit Coil). The Company's interpretation of the Agreement's grievance procedures is certainly plausible. But, the mere existence of an alternative interpretation does not provide a sufficient basis for the Court to supplant the arbitrator's judgment with its own.

The Company also contends that Arbitrator Fowler demonstrated partiality to the Union at the hearing by "flippantly stating" to Union counsel "for all to hear" that he would rule in the Union's favor; he then refused to apologize to counsel for the Company or

offer any assurance that he would maintain an open mind. In addition, the Company learned after the arbitration hearing that Arbitrator Fowler conducts seminars on how to prevent awards from being overturned. The Court finds that the alleged conduct does not warrant a finding of bias or partiality. The Company's assertion that the result itself indicates bias on the part of the arbitrator is meritless. Finally, the Company states that it has "other evidence" to support a finding of bias, but has declined to provide it at this time. Vague, unsubstantiated allegations will not support a finding of bias.

In summary, the Court will grant the Union's motion for summary judgment and will confirm the arbitrator's award.

The Union contends that the Company acted in bad faith in filing this action and seeks an award of costs, attorney's fees, and sanctions. "Bad faith requires a showing of 'an intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay.' Hoover v. Armco, Inc. 915 F.2d 355, 358 (8th Cir. 1990) (McMillian, J., dissenting), quoting Ford v. Temple Hosp., 790 F.2d 342, 347-49 (3d Cir. 1986).

The Union cites the following conduct as evidence of bad faith: The Company resisted arbitration when it received notice of arbitration from FMCS, requiring the Union to file an action to seek enforcement. However, the Company agreed to proceed to arbitration in light of the Eighth Circuit's ruling in International Ass'n of Bridge Structural, Ornamental & Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. & Const. Products, Inc., 359 F.3d 954 (8th

Cir. 2004)(arbitrator, not courts, to decide whether union's alleged failure to timely comply with notice requirement barred arbitration). Thus, the Court declines to find that the Company acted in bad faith in connection with the first action. Although it is a closer question whether the Company acted in bad faith when it filed the present action, the Court again declines to find bad faith. The Union's request for fees and sanctions will be denied. The Company shall bear all taxable costs of this action.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#12] is **granted**.

**IT IS FURTHER ORDERED** that plaintiff's motion for judgment on the pleadings [#15] is **denied**.

**IT IS FURTHER ORDERED** that defendant's motion to amend the title of its summary judgment motion [#19] is **denied as moot.**

A separate judgment confirming the arbitration award will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of January, 2007.